IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DENISE MARIE REYNOLDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIV. ACT. NO. 2:12cv1101-MEF-TFM |
| ) | (WO) |
| OCEAN BIO CHEM/KINPAK, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

Plaintiff Denise Marie Reynolds ("Plaintiff" or "Reynolds"), a former employee of Kinpak, Inc. ("Defendant" or "Kinpak"), brings this action *pro se* pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12117. Specifically, she asserts that Kinpak discriminated against her on the basis of her race, gender, and disability by terminating her from her employment.

This court has jurisdiction over the Title VII claims pursuant to 42 U.S.C. § 2000e-5 and the ADA claim pursuant to 42 U.S.C. § 12117.  Now pending before the court is the Motion for Summary Judgment. (Doc.26, filed August 21, 2013).  The court has carefully reviewed the Motion and the supporting and opposing briefs and evidentiary materials and concludes that the Motion for Summary Judgment is due to be GRANTED.

## II.     SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation omitted); Fed.R.Civ.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-324.

Once the movant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is

properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine [dispute] for trial."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the plaintiff's properly supported motion for summary judgment, the defendant is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

### III. FACTS

Viewed in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, the following facts are taken as undisputed for the purpose of summary judgment. In the Spring of 2011, Reynolds began working in the testing laboratory as a temporary employee at Kinpak, a manufacturer of cleaning and maintenance products for vehicles and boats. (Def's Tab A, Reynolds' Dep, p. 25; Def's Tab B, Exh. B, Hale's Affid., p. 2). In June 2011, Kinpak Technical Services Manager Vincent Waclawek hired Reynolds as a full-time employee in the chemical laboratory. (Reynolds' Dep., pp. 24-27, 118). Reynolds' job responsibilities included mixing chemicals while standing and entering data while sitting. (*Id.*, pp. 48, 118).

While outside her residence in February 2012, Reynolds stepped off a curb, injuring her ankle. (Reynolds' Dep., pp. 28-29, 32-33). On April 10, 2012, Reynolds went to Dr. J. Juan Chung, complaining of ankle swelling and pain. (*Id.*, pp. 32-33). Dr. Chung provided samples of pain medication and advised her to elevate her ankle. (*Id.*, pp. 33-34). In addition, he provided a written physician's statement, ordering "light duty for approximately one week." (Def's Ex. 6). The following day, Reynolds gave the physician's statement to her supervisor. (Reynolds' Dep., p. 35). Reynolds and her co-

5

workers alternated duties with one another and she performed light duty for one week. (*Id*., p. 36). Reynolds' condition, however, did not improve. (*Id*., p. 38).

On April 18, 2013, Reynolds went to Dr. Curtis McLemore, a physician at Pri-Med Physicians, Inc. (Def's Ex. 7). After conducting an x-ray of Reynolds' ankle, Dr. McLemore determined the ankle was fractured. (Reynolds' Dep., p. 39). Dr. McLemore gave her a doctor's excuse, recommending that she return to work with limited walking on April 20, 2012, and referred her to an orthopaedic specialist. (Def's Ex. 7; Reynolds' Dep., p. 39).

The next day, Reynolds went to Dr. Joseph F. Curtis at Southern Orthopaedic Surgeons. (Def's Ex. 8). Dr. Curtis gave Reynolds a doctor's excuse, in which he recommended "light duty from 4-19-12 to 4-18-12" with no squatting or kneeling, no climbing ladders or stairs, and no standing or walking greater than fifteen minutes per hour. (Def's Ex. 8). When Reynolds returned to work the following day, she gave the excuse to Mr. Waclawek, explaining that the dates on the excuse were incorrect and that Dr. Curtis recommended light duty from April 19, 2012 until May 18, 2012. (Reynolds' Dep., p. 45). Mr. Waclawek allowed Reynolds to continue light work, stating that "[a]s long as the lab was running it was no problem." (*Id*., p. 45). Reynolds and her co-workers continued to alternate duties and she performed work with limited walking. (*Id*., pp. 40-41).

On April 30, 2012, Reynolds returned to Dr. Curtis, complaining that her ankle condition had not improved. (*Id*., pp. 46-47). Dr. Curtis prescribed a boot and crutches. (*Id*., p. 49). He also gave Reynolds a doctor's excuse, in which he ordered "sit down

6

work only" and that she could resume normal work duties beginning June 8, 2012. (Def's Ex. 9). Reynolds returned to work that afternoon and gave the doctor's excuse to Mr. Waclawek. (Reynolds' Dep., pp. 47-49).

Reynolds and her coworkers agreed that "they would do [her] walking and [she] would do their sitting-down work." (*Id.*, p. 58). Despite Reynolds' and her coworkers' agreement, Mr. Waclawek and his supervisor, Mr. Anthony Hale, met with Hale and advised her that Kinpak had no "sit down work only" jobs and that she was being terminated from her employment. (Def's Tab B, Hale's Affid., p. 8). Hale also stated, "I have this doctor's excuse and you had several before, and we accommodated you with all this. But we can't accommodate you with this sit-down only work." (Reynolds' Dep., pp. 59-60). When Reynolds offered to stand for fifteen minute increments rather than following her doctor's orders, Mr. Waclawek refused to allow her to do so. (*Id.*, p. 59). At the end of their meeting, Mr. Waclawek stated, "What we want you to do is go home and get your foot better, and in a couple of years if we have a position, come back and see us. You're leaving on good terms, so we won't have a problem." (*Id.*)

On May 2, 2012, Mr. Waclawek provided Reynolds a letter of recommendation, in which he stated that she "proved to be an efficient hard-working employee" and that she "has an ability to complete all assigned work in a timely and professional manner." (Def's Ex. E). On May 17, 2012, Mr. Waclawek also provided Reynolds with a letter "to whom it may concern" in which he stated that the "reason [for her] termination was lack of work." (Def's Ex. F). Kinpak subsequently replaced Reynolds with Lucrecia Reyes, a Hispanic woman. (Reynolds' Dep., p. 101).

7

When Reynolds returned to Dr. Curtis on May 25, 2012, the doctor recommended that she discontinue the use of her crutches and boot and resume normal activities. (Reynolds' Dep., p. 52).

## IV. DISCUSSION

### A. Americans with Disabilities Act Claim

Kinpak asserts that it is entitled to summary judgment as a matter of law because Reynolds fails to establish that she is disabled within the meaning of the ADA. The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment." 42 U.S.C. § 12112(a). In order to establish a prima facie case of disability under the ADA, the plaintiff must show that (1) she has a disability; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. 42 U.S.C. § 12132. *See Earl v. Mervyns, Inc.*, 207 F.3d. 1361, 1365 (11th Cir. 2000); *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910-11 (11th Cir. 1996).

Without more, Reynolds' termination is not evidence that Kinpak discriminated against her because of her disability. The same elements that are required to prove discrimination claims under the ADA are required to prove discrimination claims under Title VII. *See Earl*, *supra*. In an employment discrimination case, the plaintiff bears the ultimate burden of proving intentional discrimination. *Texas Dept. of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To defeat Defendant's Motion for Summary Judgment, Reynolds must establish a prima facie case of discrimination by one of three

8

generally accepted methods: (1) presenting direct evidence of discriminatory intent; (2) presenting evidence to satisfy the four-part circumstantial evidence test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) presenting statistical proof. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).

Reynolds does not present any direct evidence of discrimination nor does she rely on statistical evidence to support her claim. Because direct evidence of discrimination is difficult to produce, the Supreme Court in *McDonnell Douglas*, *supra*, created the now familiar framework for the burden of production and order of presentation of proof to analyze circumstantial evidence of discrimination. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir 1984). To establish a prima facie case of wrongful discharge, a plaintiff must prove that (1) she belongs to a protected class; (2) she was discharged; (3) she was replaced by an individual outside her protected class; and (4) she was qualified for the position held. *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995). If Reynolds establishes a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for her termination. *McDonnell Douglas*, 411 U.S. at 802-04. If Kinpak meets its burden of production, Reynolds must present substantial evidence that the defendant's justification for her termination is pretextual. *Id*.

Kinpak alleges that Reynolds fails to establish a prima facie case of discrimination because she has not demonstrated that she has a disability. Under the ADA, a person has an "actual" disability if she: (A) has a physical or mental impairment which substantially

limits one or more major life activities; (B) has a record of such impairment; or (C) is regarded as having such an impairment. *See* 42 U.S.C. § 12102.

Reynolds argues that she is actually disabled because her ankle injury substantially limits her ability to perform work. In determining whether an individual is substantially limited in a major life activity, the following factors should be considered: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact of the impairment. *Hillburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999); *Hetherington v. Wal-Mart, Inc.*, 511 Fed. Appx. 909, 912 (11th Cir. 2013).

Major life activities encompass "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Mendiola v. Vision Hospitality*, 588 F. Supp. 2d 1295, 1302 (M.D. Ala. 2008). An individual's ability to work is substantially impaired if she is "significantly restricted" in her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to an average person who has comparable training, skills, and abilities. *Hillburn*, *supra*; *Hetherington*, *supra*. Reynolds fails to show that her ankle injury significantly restricted her ability to perform a class or broad range of jobs.

In addition, temporary impairments are not commonly regarded as disabilities. *See* 28 C.F.R. § 35 app. B. "'A severe limitation that is short term and temporary is not evidence of a disability.'" *Diaz v. Transatlantic Bank*, 367 Fed. Appx. 93, 98 (11th Cir. 2010) (quoting *Garrett v. Univ. of Ala. At Birmingham Bd. of Trs.*, 507 F.3d 1306 1315 (11th Cir. 2007)). *See also Gilliard v. Ga. Dept. of Corrections*, 500 Fed. Appx. 860, 866

(11th Cir. 2012) (plaintiff with spinal arthritis, a bulging disc, and osteoarthritis requiring knee replacement surgery which affected her ability to walk, stand, and sit failed to establish a prima facie case of disability because her conditions were not "severe, long-term, or permanent"). There is no dispute that, after May 25, 2012, Reynolds was released from treatment by her physician and that she resumed normal day-to-day activities. (Reynolds' Dep., pp. 50-52). Thus, Reynolds' temporary ankle injury does not establish a disability under the ADA.

Reynolds is also unable to demonstrate that Kinpak regarded her as having a disabling impairment. Reynolds argues that her supervisor's remark that she should "go home and get her foot better" and to return "in a couple of years if we have a position" is evidence that her employer perceived her as suffering from a disability. (Reynolds' Dep., p. 59). Transitory and minor impairments, however, are not considered to be disabilities. 42 U.S.C. § 12102(3)(B). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id*. Whether an employer regards an employee as having an impairment that is transitory and minor is determined objectively, rather than subjectively. 29 C.F.R. § 1630.15(f). The evidentiary materials indicate that, on or around April 30, 2012, Reynolds gave her supervisor medical documentation indicating that she would be able to return to normal work duties beginning June 8, 2012. (Def's Ex. 9). Reynolds does not identify any record evidence which objectively shows that, at the time of her termination, her condition could reasonably be expected to last longer than six months. *See Wallner v. MHV Sonics, Inc*., No. 8:10-cv-2039-JDW-EAJ, 2011

WL 5358749, at *4 (M.D. Fla., Nov. 4, 2011). Consequently, Reynolds fails to establish a prima facie case of ADA discrimination.

Moreover, even assuming *arguendo* Reynolds established a prima facie case of ADA discrimination, the court concludes that Kinpak proffered a legitimate, non-discriminatory reason for terminating Reynolds and that Reynolds failed to demonstrate that the reason is pretextual. Under the second prong of the McDonnell Douglas test, the burden shifts to Kinpak to present a legitimate, non-discriminatory reason for Reynolds' termination. *McDonnell Douglas*, 411 U.S. at 802. In this Circuit, "[t]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). "To satisfy [its] burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254-55). This intermediate burden is "exceedingly light." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994). Kinpak contends that Reynolds was terminated because it had no jobs available which could accommodate Reynolds' "sit down work only" restriction. (Doc. No. 27, Def's Br., p. 8). Thus, the defendant has articulated a legitimate, non-discriminatory reason for Reynolds' termination.

Next, the court turns to whether Reynolds has demonstrated that Kinpak's legitimate non-discriminatory reason for her termination is a pretext for ADA

discrimination. Reynolds argues that Kinpak's reason for terminating her based on "lack of work" is a pretext for discrimination because she was replaced the following day by a Hispanic woman, Lucrecia Reyes. The problem with Reynolds' argument is that there is no showing that Ms. Reyes was hired to perform "sit down work only." Thus, Reynolds fails to demonstrate pretext on this basis.

Reynolds also argues that Kinpak's reason for her termination is pretextual because Kinpak "could have provided her a position where she won't have to be on her feet standing as they have done with others before such as Randy Reyes." (Doc. No. 33, Pl's Resp., p. 9). She also argues that Kinpak refused to accommodate her disability even though both she and her coworkers agreed to redistribute their workload. (*Id.*, p. 2.) The court construes Reynolds' arguments as an accommodation claim.[1]

"The ADA defines 'discrimination' to include 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . .'" 42 U.S.C. § 12112(b)(5)(A). *See also Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1224 (11th Cir. 1997). Consequently, the ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A). *See also Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). It is the plaintiff's burden to identify an accommodation and demonstrate that the accommodation would permit him to perform

---

[1] To the extent Reynolds argues that Kinpak's failure to accommodate her is a pretext for discrimination, the court concludes her argument is without merit.

the essential functions of his job. *Lucas*, 257 F.3d at 1255-56. *See also Stewart v. Happy Herman's Chesire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) ("Moreover, the burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable.").

Reynolds fails to demonstrate that the reallocation of job duties between herself and her coworkers is reasonable under the circumstances. An employer is "not required to reallocate job duties to change the functions of a job." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000); *Webb v. Donley*, 347 Fed. Appx. 443, 446 (11th Cir. 2009). "[T]he law is clear that reallocation of job duties constitutes a change in the essential functions of the employee's job and therefore is not required under the ADA." *Mont-Ros v. City of West Miami*, 111 F. Supp. 2d 1338, 1359 (S.D. Fla. 2000) (citations omitted). Reynolds' argument that another employee was accommodated does not create a genuine dispute of material fact. Reynolds fails to present any admissible evidence demonstrating that another employee classified as disabled with similar job duties was accommodated with a no-standing option on a prior occasion or that accommodating her in a similar manner would be reasonable under the circumstances. More importantly, Reynolds cannot establish an ADA accommodation claim because she is not disabled. This court therefore concludes that Reynolds fails to demonstrate a genuine dispute of material fact with respect to her accommodation claim. Consequently, the Motion for Summary Judgment on the ADA claims is due to be granted in favor of Kinpak.

### C.     The Title VII Claims

Reynolds asserts that Kinpak violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., by terminating her from her position on the basis of her race and gender. Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin in a variety of employment practices. *See Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995). To establish a prima facie case of Title VII discrimination, a plaintiff must show (1) she is a member of a protected class; (2) she was qualified for the job from which she was discharged; (3) she was discharged; and (4) she was treated less favorably than a similarly situated person outside her protected class or her former position was filled by a person outside her protected class. *See, e.g., Maynard v. Rd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

Kinpak argues that Reynolds fails to show that similarly situated persons outside of her protected class received more favorable treatment. With respect to her claim that she was discriminated based on her race and gender, Reynolds alleges that she is similarly situated to one Hispanic male employee – Randy Reyes. Reynolds argues that Mr. Reyes broke his ankle and continued to work even though he wore a cast and used crutches. Kinpak asserts that Mr. Reyes is not a proper comparator because he did not request "sit down work only" and used vacation time and unpaid leave before returning to work with no restrictions. Mr. Reyes and Reynolds are not similarly situated. The undisputed evidence demonstrates that Reynolds provided a medical excuse to her supervisor which ordered "sit down work only." Nothing in the record indicates that Mr. Reyes provided a similar excuse to his supervisors or otherwise requested an

15

accommodation. Given the dissimilarities, Reynolds' accusations of discrimination on this basis are insufficient to establish that both Reynolds and Mr. Reyes were similarly situated. Thus, Mr. Reyes is not a proper comparator in this case.

To the extent Reynolds argues that she has established a prima facie case of gender discrimination because she was replaced by a Hispanic woman, her argument is without merit. Both Reynolds and Ms. Reyes are female. Thus, Ms. Reyes is not outside Reynolds' protected class. It is arguable, however, that Reynolds has established a prima facie case of race discrimination because she alleges that she was replaced by a Hispanic woman.[2] Nonetheless, as previously discussed, Kinpak has set forth a non-discriminatory reason for Reynolds' termination and Reynolds fails to demonstrate that Kinpak's reason for her termination is a pretext for race discrimination.

This Circuit has consistently held that federal courts, in resolving these types of claims, do not review the accuracy of an employer's decision to terminate a plaintiff's employment. *See e.g., Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1321 n.16 (11th Cir. 1998), *quoting Nix,* 738 F.2d at 1187 ("Title VII is not a shield against harsh treatment at the workplace. . . The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."). Instead, the crucial question is whether the employer was motivated by an improper discriminatory bias. *See, e.g., Standard v.*

---

[2] The pleadings filed by the plaintiff are not a model of clarity. In her response, Reynolds argues that Kinpak "treat[s] the Hispanic worker better [than] anyone else (other races especially black but more so black females)." (Doc. No. 33, Pl's Resp., p. 11). The court, however, is unable to discern whether Reynolds is African-American or a member of another protected class. The defense does not argue that Reynolds fails to establish a prima facie case on this basis.

*A.B.E.L. Servs.*, 161 F.3d 1318, 1333 (11th Cir. 1998); *Combs*, 106 F.3d at 1538. The court concludes that there is no genuine dispute of material fact with respect to Reynolds' claims of race and gender discrimination. Consequently, the Motion for Summary Judgment on the Title VII claims is due to be granted in favor of Kinpak.

### V. CONCLUSION

Accordingly, it is the

RECOMMENDATION of the Magistrate Judge as follows:

(1)     The Motion for Summary Judgment be GRANTED in favor of Defendant. (Doc. No. 26).

(2)     This case be DISMISSED with prejudice.

(3)     The costs of these proceedings be taxed against Plaintiff.

Finally, it is

ORDERED that the parties shall file any objections to the said Recommendation on or before January 24, 2014. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except

upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 9th day of January, 2014.

      /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE